A. M. NICHOLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12623. Promulgated March 29, 1929.

*W. W. Booth, Esq.,* and *W. A. Seifert, Esq.,* for the petitioner.
*L. A. Luce, Esq.,* for the respondent.

OPINION.

MURDOCK: The petitioner has alleged that the Commissioner erred in adding to his income for the taxable year 1920 the amounts of $11,000 and $14,000 representing the face value of the notes and bonds received as compensation during that year by the petitioner under the circumstances set forth in the findings of fact. It is the petitioner's contention that none of this amount represented income to him during the year, for the reason that the notes and bonds so received in 1920, and payable in 1927, had no market value at the time received.

Section 213 of the Act of 1918 provides as follows:

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * *.

Regulations 45, promulgated by the Commissioner with the approval of the Secretary, relating to the 1918 Act, contains the following:

ART. 33. *Compensation paid other than in cash.*—Where services are paid for with something other than money, the fair market value of the thing taken in payment is the amount to be included as income. * * *

ART. 34. *Compensation paid in notes.*—Promissory notes received in payment for services, and not merely as security for such payment, constitute income to the amount of their fair market value. * * *

In the case of *John B. Nordholt*, 4 B. T. A. 509, the Board considered and approved a somewhat similar regulation promulgated under the Revenue Act of 1916 (art. 4, par. 22 of Regulations 33) and held that stock paid as compensation for personal services was taxable as income to the extent of its fair market value. See also *Walter T. Smith*, 4 B. T. A. 397, holding that bonds received as compensation for personal services are income in the year received to the extent of their fair market value.

Presumably, then, the Commissioner in conformance with his regulations has determined that the fair market value of the notes and bonds received by the petitioner equaled their face value. This determination must be sustained unless the petitioner can show that in 1920 their market value was less than the amount determined, or that at that time they had no market value whatsoever, which latter condition is the one the petitioner contends was a fact. To meet the burden of proof he has offered the opinion testimony of two witnesses—one, a banker who was familiar with the values of coal properties and securities issued by coal companies of the vicinity during the year 1920; and the other, the former secretary-treasurer of the General Investment Co., who had held this position during the taxable year. In answer to a hypothetical question as to whether the notes and bonds had a market value in 1920, the banker testified that in his opinion neither would be readily marketable. When examined further concerning this opinion he stated that he did not know where a market could have been found for the bonds and that he or his bank would not have paid anything for them in 1920. The former officer of the company testified that in his opinion neither the notes nor the bonds had any market value in 1920.

It may be observed that where the issue before the Board concerns the existence of market value, a question of fact, expert opinion

testimony as to such value may be only one of several methods of proof and is merely evidence to be followed or not, to the extent that it may be considered reliable. See *The Conqueror*, 166 U. S. 110; *Brooklyn Union Gas Co.* v. *Prendergast*, 7 Fed. (2d) 628, 668; *W. S. Bogle & Co.*, 5 B. T. A. 541; 26 Fed. (2d) 771; *Woodside Cotton Mills*, 13 B. T. A. 266; *State Safety Co.*, 13 B. T. A. 1385. Also, its efficacy as proof may depend to a great degree upon the qualifications of the witnesses and their familiarity with the market for the property concerning which they are testifying. The fact that one of the witnesses was during the taxable year an officer of the company which issued the notes and bonds, does not show that he was familiar with the market values of its securities. In this particular case both the notes and the bonds were issued in payment for the property and it does not appear that the witness was ever concerned with the sale of the securities or with any attempt to sell them.

The petitioner was attempting to prove that the fair market value of the securities was *nihil*. He did not necessarily accomplish this by merely having the witnesses state that in their opinions the securities had no market value. It is our duty to decide whether or not these securities had any fair market value at the controlling date, and we must be given sufficient facts on which to base our decision in order that it may not be a mere echo of the unsupported opinions of others. Fair market value means the amount which would be mutually agreed upon in a sale between a willing seller not forced to sell and a willing purchaser not forced to buy. See *Somers Lumber Co.*, 2 B. T. A. 106; *James Couzens*, 11 B. T. A. 1040, 1162; *Phillips* v. *United States*, 12 Fed. (2d) 598. In this particular case it does not appear that the witnesses understood this to be the meaning of the term fair market value, so that our decision should not depend solely upon their opinions. Cf. *Merritt J. Corbett*, 15 B. T. A. 698.

The General Investment Co. was only a holding company of undeveloped coal lands, having no income at any time from operations. It did not receive income from any source from July 1, 1920, throughout the balance of the year. Its bills and accounts payable were in excess of its receivables and its only real assets consisted of undeveloped coal lands, the value of which was not given. The comparatively small amount of cash given in purchase of the acreage which was bought in 1920 was borrowed from another corporation. The remainder of the payment consisted of the General Investment Co.'s notes and bonds. The notes were unsecured. Two of the petitioner's creditors refused to accept them at any value in payment of their debt. These facts are sufficient to convince us that at the time received by the petitioner the notes had no market value and represented no taxable income to him at such time. We therefore conclude

that the Commissioner was in error in including the amount of $14,000, representing the face value of the notes, in the petitioner's income for the year 1920.

However, as to the bonds, the petitioner's evidence is not sufficient to show that they had no market value at the time received. Although they were not payable for seven years, they were secured by a deed to the property purchased. It is true that the value of this property does not appear on the record, but, even if it were worth little more than the amount of cash paid in its purchase, it is quite probable that this security would give some value to the bonds for which a purchaser would be willing to pay. The determination of the Commissioner in respect to the bonds is sustained.

*Judgment will be entered under Rule 50.*